**In re VECCO CONSTRUCTION INDUSTRIES, INC., Debtor,**

**Vecco Concrete Construction Co. of Virginia, Vecco Concrete Construction Co. of D. C., Vecco Concrete Construction Co. of Maryland, Vecco Service Company, Debtors.**

**Bankruptcy No. 79–224–A.**

United States Bankruptcy Court,
E. D. Virginia,
Alexandria Division.

June 9, 1980.

Stanley J. Samorajczyk, Hazel, Beckhorn & Hanes, Fairfax, Va., for debtors.

## MEMORANDUM OPINION AND ORDER

MARTIN V. B. BOSTETTER, Jr., Bankruptcy Judge.

The debtor, Vecco Construction Industries, Inc. ("Vecco") filed a petition for relief under Chapter XI of the Bankruptcy Act on March 14, 1979. Vecco's four subsidiary corporations filed individual petitions under Chapter 11 in January of 1980. The four subsidiaries seek to consolidate their petitions with that of Vecco.

The four subsidiary corporations, Vecco Concrete Construction Co. of Virginia ("Vecco of Va."), Vecco Concrete Construction Co. of D.C. ("Vecco of D.C."), Vecco Concrete Construction Co. of Maryland ("Vecco of Md.") and Vecco Services Com-

pany ("Vecco Service") are wholly owned by Vecco. Vecco holds in its own name the stock issued by these subsidiaries. Vecco's principal line of endeavor is in the concrete construction business. Vecco of Va., Vecco of D.C., and Vecco of Md., were incorporated to do construction work in Virginia, the District of Columbia and Maryland, respectively. Vecco Service was incorporated for the purpose of providing labor for the other companies.

Prior to 1976, the individual companies utilized their own general operating accounts for issuing disbursements and entering receipts. Owing primarily to the close relationship between the companies, however, consolidated financial reports were issued in lieu of individual statements. The individual operating accounts were also consolidated into one account under the name of Vecco Service in 1976.

By January of 1978 Vecco had acquired all of the assets of its subsidiaries, as well as having assumed their liabilities. Vecco made little, if any, effort to segregate the subsidiaries' accounts receivable, disbursements or income. Nor did Vecco attempt to segregate the assets or liabilities of the subsidiaries.

Vecco and its subsidiaries have the identical directors and utilize the same office space. Prior to January 1, 1978, Vecco had subcontracted from Vecco Service its administrative employees. Since January 1, 1978, Vecco has employed the administrative employees and pays all administrative costs.

As indicated above, the individual general operating accounts of the companies were consolidated into one account in the name of Vecco Service. All receipts and disbursements were made from this account. Each of the subsidiaries were charged for a disbursement made on its behalf through inter-company accounts. The allotment provided to each subsidiary was usually in proportion to the inventory received by each subsidiary for the construction job being undertaken. Once inventory was received, however, the subsidiaries frequently transferred such inventory from company to company and site to site without an accom-

panying inter-company debit or credit to reflect the transfer. Beginning in January of 1978, Vecco has made no allocation of payments for items of inventory, equipment, or any other costs, among the various subsidiaries.

As of March 14, 1979, the date Vecco filed its petition, its books and records carried all of the combined assets and liabilities of the parent (Vecco) and its subsidiaries. The schedules filed by Vecco list all of the liabilities and assets as those of Vecco, rather than attempting to segregate the same among Vecco's subsidiaries.

■ The debtor corporations seek approval by this Court for the consolidation of their applications into the petition filed by Vecco under Chapter XI of the Bankruptcy Act. It is their position that consolidation is essential to ensure the development and implementation of a meaningful Plan of Arrangement. For this purpose, should the Court approve the debtors' application, all claims filed in the separate proceedings of each company, to the extent valid, would be considered a claim in the consolidated proceeding.

Due to the organizational make-up evidenced by the now common-place multitiered corporations in existence today, substantive consolidation of a parent corporation and its subsidiaries has been increasingly utilized as a mechanism to deal with corporations coming within the purview of the Act. This relatively recent development has been given judicial effect without the benefit of statutory authority or approval by way of rule of procedure. Rather, courts which have allowed substantive consolidation have done so based upon equitable principles.

■ It is clear that bankruptcy courts have the power to consolidate proceedings as well as consolidating the assets and liabilities of the debtors before the court. *In the Matter of Commercial Envelope Manufacturing Co., Inc., et al.*, 3 BCD 647, 648–49 (S.D.N.Y.1977); *Soviero v. Franklin National Bank of Long Island*, 328 F.2d 446 (2d Cir. 1964). This power arises from the court's equity jurisdiction. It is well established that " 'courts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity'." *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). Section 2a(15) of the Bankruptcy Act, 11 U.S.C. § 11(a)(15), provides that the court may "make such orders . . . in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title."

Vecco argues that recent case law places greater emphasis on the interaction of the corporate group and the economic benefit to creditors in a consolidation proceeding, as opposed to the requirements enunciated in earlier cases that each of the corporations have the identical creditors or that corporate formalities were so thinly veiled that creditors tended to rely upon the group for payment rather than a single corporation.

In Chapter XI proceedings, particularly where the assets and liabilities of the estate are being dealt with, it is incumbent upon the Court to discern what is best for the general unsecured creditor. As Vecco's assets at the time of filing are almost entirely subject to the claims of the Northern Virginia Bank, any disbursements to unsecured creditors may be contingent upon Vecco's ability to operate current and continuing business operations.

The liberal trend in allowing consolidation of proceedings, as evidenced by recent case law, arises from the result of increased judicial recognition of the widespread use of interrelated corporate structures by subsidiary corporations operating under a parent entity's corporate umbrella for tax and business planning purposes. In *Soviero v. Franklin National Bank of Long Island*, supra 328 F.2d at 448, the Second Circuit made the observation that "[o]ne gains the distinct impression that the bankrupt held up the veils of the fourteen collateral corporations primarily, if not solely, for the benefit of the tax gatherer, but otherwise completely disregarded them."

The Second Circuit aptly stated that in considering a matter for consolidation, the court must be cognizant of the fact that "[w]hile the term has a disarmingly innocent sound, consolidation in bankruptcy

. . . is no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights." *In the Matter of Flora Mir Candy Corporation,* 432 F.2d 1060, 1062 (2d Cir. 1970). The Second Circuit *In re Continental Vending Machine Corp.,* 517 F.2d 997, 1001 (2d Cir. 1975) stressed that the court's power to consolidate should be:

"'[U]sed sparingly', because of the possibility of unfair treatment of creditors who have dealt solely with the [companies] having a surplus as opposed to those who have dealt with the related entities with deficiencies."

The trial and appellate courts, in addressing the issue of consolidation, have delineated various criteria which, when used as a yardstick, have assisted the courts in determining whether it was proper to allow proceedings to be consolidated. These elements may be stated as follows: First, the degree of difficulty in segregating and ascertaining individual assets and liability. Second, the presence or absence of consolidated financial statements. Third, the profitability of consolidation at a single physical location. Fourth, the commingling of assets and business functions. Fifth, the unity of interests and ownership between the various corporate entities. Sixth, the existence of parent and inter-corporate guarantees on loans. Seventh, the transfer of assets without formal observance of corporate formalities.

The Second Circuit in *Chemical Bank New York Trust Company v. Kheel,* 369 F.2d 845 (2d Cir. 1966) established as a criterion whether the individual assets of the corporate entities were so unascertainable and hopelessly obscured as to entail substantial expense in segregating such assets and liabilities, as to threaten the realization of net assets for the benefit of creditors. Upon such a finding, the Second Circuit determined that even absent a showing that creditors actually dealt with the parent corporations and its subsidiaries as a single unit, it would invoke its broad equity power to consolidate the proceedings.

The extent to which assets of the corporate entities are found to be hopelessly commingled must necessarily be decided on a case-by-case basis. The Tenth Circuit in *In the Matter of Gulfco Inv. Corp.,* 593 F.2d 921, 929 (10th Cir. 1979) determined that "[a]lthough the intercompany transactions were complex, the record [did] not indicate that the assets of the entities were hopelessly commingled." This determination turned on findings that even though the corporations in question were wholly-owned subsidiaries, "each had its own officers who were not officers in any of the upstream related corporations." Nor did the record in *Gulfco Inv. Corp.* "indicate which of the corporations benefited from the intercompany transactions or provided financing for others on arm's length terms."

Prior to January 1, 1978, Vecco and its subsidiaries engaged in numerous intercompany activities, including the transfer of assets and the creation of inter-company liabilities. As Vecco has used a consolidated general ledger since January 1, 1978, no effort has been undertaken to apportion the assets, receivables, payables or liabilities either owing by or to each of the five companies.

Vecco assumed the contractual obligations of each of its four subsidiaries on January 1, 1978. As of that date, no transfer of Vecco's assets has taken place to any of its subsidiaries. Vecco claims that as it has been operating essentially as a single entity following the absorption of its subsidiaries, a complete and accurate financial audit segregating the assets and liabilities of the individual subsidiaries would be next to impossible. Even if such an audit were attempted, Vecco argues that any allocation of assets and liabilities would "be based on arbitrary assumptions and calculated judgments not subject to accurate analysis and precise accounting."

The Second Circuit in *Continental Vending Machine Corp., supra* 517 F.2d at 1001, made the observation that allowing the consolidation of proceedings may very well inequitably affect the substantive rights of creditors. The court, in an effort to balance the need to consolidate with the substantive rights of creditors, set forth a guideline which requires that any inequities involved must "be heavily outweighed by

practical considerations such as the accounting difficulties (and expense) which may occur where the interrelationships of the corporate group are highly complex, or perhaps untraceable."

In *Soviero v. Franklin National Bank, supra,* the court found that the debtor companies had issued a consolidated financial statement. All records were maintained for the debtor companies by a staff of bookkeepers under the employment of the bankrupt corporation. The *Soviero* court considered the existence of a consolidated financial statement as a significant factor in authorizing consolidation.

Vecco acknowledges that it was possible prior to January 1, 1978, to produce individual financial statements for each of the subsidiary corporations, although this was never done. Rather, the subsidiary corporations have always issued financial statements as well as tax returns in the name of Vecco. Vecco asserts the position that because of the consolidated nature of the five corporations it would be impossible to accurately assemble individual financial reports.

The continued profitability of corporate entities operating on a consolidated basis was seen as an important consideration in allowing consolidation in *Commercial Envelope Manufacturing Co., Inc., supra,* 3 BCD at 650. The court determined that even the "showing that consolidation would be the reverse of equity" was an insufficient basis to deny consolidation if the continued business success of the debtor corporations was of a character to inure to the benefit of creditors.

Vecco and its four subsidiaries presently operate from the same business location. Overhead, management, accounting and other related expenses are shared by all five companies. Vecco argues that segregation of the business functions and operations of the five companies would be difficult without a physical division of the corporations. Vecco maintains that any such division would entail substantial increases in overhead expenses and necessitate the inefficient use of personnel.

After January 1, 1978, Vecco's subsidiaries no longer maintained individual book entries for income receivables and payables of each corporation. Receipts for all five companies were deposited in one operating account which was in Vecco's name. All disbursements were made from this account. Creditors were conducting business with Vecco and its subsidiaries, rather than a single specified entity. Vecco Service, Vecco maintains, conducted business only with Vecco and its other subsidiaries. Based upon the foregoing, Vecco argues that after January 1, 1978, the four subsidiaries had no separate existence on their own but were instrumentalities of Vecco.

Vecco further argues that there exists a unity of interest and ownership among the Vecco companies. As in *Soviero, supra,* and *Commercial Envelope, supra,* Vecco owned all the stock in its subsidiaries. Vecco also shares the same officers and directors with its subsidiaries as well as conducting the same business. Vecco concludes that even though in form the five companies may not be a physical unit, in substance Vecco "operated the companies as a cohesive and cooperative economic and business unit."

The court in *Soviero v. Franklin National Bank of Long Island, supra* 328 F.2d at 448 articulated the view that the subsidiaries:

"[W]ere but instrumentalities of the bankrupt with no separate existence of their own. Consequently, there existed a unity of interest and ownership common to all corporations, and that to adhere to the separate corporate entities theory would result in an injustice to the bankrupt's creditors."

Vecco also argues that the existence of an inter-company guarantee of the major secured obligation of Vecco with the Northern Virginia Bank constitutes further evidence of a unity of interest among the five companies. As support for its position Vecco refers to *Soviero, supra,* where the existence of inter-company and parent guarantees was seen as an important element in approving substantive consolidation.

Reference has been made to Vecco's assertions that Vecco companies were engaged in numerous inter-company activities which resulted in frequent transfers of as-

sets; the assumption by Vecco of the assets and liabilities of its subsidiaries; and the institution of a single operating account after January 1, 1978, in which the receipts of Vecco and its subsidiaries were deposited in Vecco's name from which disbursements were made.

In essence, Vecco maintains that the five companies were operated substantively as a single business entity without regard to the formal legal requirements of the subsidiaries as separate and independent corporations. The court in *Soviero* determined that commingling of assets and function evidenced a significant disregard of corporate form. The Tenth Circuit in *Gulfco Inv. Corp., supra* 593 F.2d at 928, found that:

"[w]here a corporation is a mere instrumentality or alter ego of the bankrupt corporation, with no independent existence of its own, equity would favor disregarding the separate corporate entities."

Similarly, the Second Circuit in *Continental Vending Machines, supra* 517 F.2d at 1000, concluded that as a matter of equity in a consolidation case, the bankruptcy court may pierce the corporate veils and disregard the corporate form so as "to reach assets for the satisfaction of debts of a related corporation."

The court in *In the Matter of Wm. Gluckin Company, Ltd.*, 457 F.Supp. 379 (S.D.N.Y.1978) did not consider it necessary to disregard the corporate identity. The court stated:

"While many of the considerations leading to a decision to consolidate may also lead to a conclusion that corporate identities should be disregarded, such a conclusion is not compelled. The standard for consolidation—that 'the interrelationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any net assets for all the creditors, does not require any 'piercing of the corporate veil'." (citations omitted.)

*Id.* at 384.

Vecco claims that it is unaware of any creditor of the Vecco companies who would be inconvenienced or prejudiced by a granting of Vecco's motion for substantive consolidation. No creditor voiced an objection to such a consolidation at the hearing on this matter. It would appear that the debtors' observations that the:

"Consolidation would insure equal treatment of all creditors' claims and access to all assets of the VECCO companies regardless of the previous transfers of assets or liabilities . . . [and that such a] . . . [c]onsolidation would create maximum savings of administrative expenses in the proceedings, especially in the area of daily business operations[ ]"

are valid based upon the foregoing.

Accordingly, it is ordered that the consolidation requested by the four subsidiaries be granted.