**In re FOOD FAIR, INC., Debtor.**

**Bankruptcy No. 78 B 1765.**

United States Bankruptcy Court, S. D. New York.

March 18, 1981.

Levin & Weintraub, New York City, for debtor.

Cabell, Kennedy & French, New York City, for Colgate-Palmolive Co.

Proskauer, Rose, Goetz & Mendelsohn, New York City, for Line of Credit Banks.

Otterbourg, Steindler, Houston & Rosen, New York City, for Creditors Committee.

White & Williams, Philadelphia, Pa., for Central Penn. Nat. Bank.

Gelberg & Kronovet, Shea & Gould, New York City, for Travelers Ins. Co., et al.

Marcus & Angel, Vladeck, Elias, Vladeck & Engelhard, P. C., New York City, for UFCW, et al.

Weil, Gotshal & Manges, New York City, for Revolving Credit Banks.

## MEMORANDUM AND ORDER

JOHN J. GALGAY, Bankruptcy Judge.

On October 2, 1978 Food Fair, Inc., J. M. Fields, Inc., Hills Supermarkets, Inc., F. F. Financial Corporation, F. F. Financial Corp. of New Jersey, F. F. Financial Corps. of Florida, Newcorp Supermarkets, Inc., Mark Distribution Corporation, Fixtures and Equipment Leasing Co., Inc., and Drug Pride, Inc., (the Debtors) each filed a petition for an arrangement under Chapter XI, section 322 of the Bankruptcy Act. On that same date this Court entered an order authorizing procedural consolidation and joint administration in accordance with Rules 117 and 11–14 of the Rules of Bankruptcy Procedure. The issue now before this Court is whether these cases should be substantively consolidated so that a single plan of arrangement based on merged assets and liabilities may be filed.

The Debtors filed a notice of motion dated December 9, 1980 which was duly served upon all the creditors of the Debtors who have filed claims in these proceedings or who were listed in the books and records of these Debtors. Hearings on the application were held on February 11 and 20, at which time the Debtors presented their case, supported in their application by the representatives of the consolidated creditors' committee.

Although no opposition to the motion has been filed, this Court is mindful of its duties to scrutinize carefully the evidence offered, *In re Commercial Envelope Manufacturing Co., Inc.*, 3 BCD 647, 648 (S.D.N.Y.1977), as "consolidation in bankruptcy, in the form directed in this case, is no mere instrument of procedural convenience . . . but a measure vitally affecting substantive rights." *In re Flora Mir Candy Corporation*, 432 F.2d 1060, 1062 (2d Cir. 1978). Based on my knowledge of these proceedings since the filings in October 1978 and on the testimony and exhibits produced at the full day hearing on February 20, this Court concludes that the requirements for substantive consolidation developed by the

courts of this circuit have been satisfied, and that the application of the Debtors for an order consolidating the separate proceedings into a single proceeding thereby merging all assets and liabilities, and eliminating all intercompany obligations and guarantees is hereby granted.

Food Fair, Inc. (Food Fair) is a publicaly held corporation whose stock was traded on the New York Stock Exchange prior to the filing of the petitions. All of the other Debtors are wholly owned subsidiaries or divisions of Food Fair either acquired or created to engage in a variety of operations. The extent of Food Fair's involvement in numerous companies was evidenced by a seven page list of Food Fair "related" companies presented at the hearing. (Debtors' Exhibit # 1).

Food Fair is and was primarily engaged in operating a chain of retail supermarkets, now primarily along the southern part of the east coast. Newcorp Supermarket, Inc., (Newcorp) was organized in 1976 so that Food Fair could acquire and operate seventeen "Penn Fruit" supermarkets in the Philadelphia area. In 1977 Hill Supermarkets, Inc. (Hills) was acquired by Food Fair to extend its supermarket operations into Long Island. According to the testimony of Leo Dicandillo, treasurer of Food Fair from 1974–1979, much of the purchasing for all the supermarkets, Food Fair, Newcorp, and Hills, was done centrally through Food Fair and all of the bills, except those small enough to be covered by petty cash, were paid with Food Fair checks. (Debtors' Exhibits 10, 11 and Transcript of February 20 at p. 43). The Hills and Newcorp locations were closed during these proceedings and the proceeds realized from the sale of these holdings are available to satisfy the claims of creditors.

In 1961 Food Fair expanded into general merchandise discounting by acquiring the assets of Fields, a discount chain operating 33 stores along the east coast. Food Fair opened an additional 54 discount stores, many located next to Food Fair Supermarkets on property either owned by or leased to Food Fair. (Tr. at p. 68). From almost the time of acquisition, Food Fair was guaranteeing many of Fields' obligations to its creditors. (Debtors' Exhibits 14, 15). Additionally, Food Fair was advancing money to Fields to cover losses, with approximately $120,000,000 still outstanding from these prepetition advances. By an order of this Court dated October 26, 1978, Food Fair guaranteed all of the obligations of Fields for goods sold and delivered during the Chapter XI proceeding. For that reason, most of the Fields trade creditors have filed duplicate claims, one against Fields and one against Food Fair as guarantor.

It was Food Fair that hired key Fields personnel, including the president and chief executive officer who was required to report to the Food Fair board of directors. (Debtors' Exhibit # 3). As of the date of the filings of the petitions, four of the directors/officers of Fields also held positions as directors/officers of Food Fair, (Debtors' Exhibit # 2), and it was the Food Fair board of directors that determined that the Fields operations should be terminated. (Debtors' Exhibit # 4—April 11, 1979 minutes).

The remaining Debtors, except Drug Pride, Inc., which is a terminated franchise operation, were companies set up to serve the needs of other Food Fair corporations. Food Fair Financial Corporation and Food Fair Financial Corp. of New Jersey and Florida were real estate holding companies only. Mark Distribution Corporation was the buying arm of Fields, while Fixtures and Equipment Leasing Co., Inc. leased equipment to Fields and Food Fair and the franchisees, and was organized for the tax planning benefits. As evidenced by Food Fair's annual reports, all of the activities of the debtor companies were reported in consolidated statements, at least since 1973 (Debtors' Exhibits 7A–H).

█ From this brief outline of the prepetition activities of the Debtors in these proceedings, it is not difficult to conclude that by the time of the filings Food Fair had grown into a multitiered corporation with Food Fair and its board of directors at the top. It was the Food Fair board of

directors which made the decision that all of the Debtors in this proceeding should petition for relief under Chapter XI (Debtors Exhibit # 5—October 1, 1978 minutes). As recently noted by the court in *In re Vecco Construction Industries*, 4 B.R. 407 (Bkrtcy. E.D. Va.1980), the increased need for substantive consolidations is a direct result of the proliferation of corporations such as Food Fair. That court went on to summarize the factors to be weighed in determining whether the motion to consolidate should be granted by the bankruptcy court under its equity power. It has long been recognized that, as no statutory authority grants the court the authority to disregard separate corporate structures and create a single estate for the benefit of creditors, the power to consolidate must derive from the general equity jurisdiction of a court of bankruptcy, *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), as implemented by section 2a(15) of the Bankruptcy Act which authorizes the court to issue orders necessary to carry out the provisions of the Act.

Culled from key cases such as *In re Continental Vending Machine Corp.*, 517 F.2d 997 (2d Cir. 1975), *In re Flora Mir Candy Corporation*, 432 F.2d 1060 (2d Cir. 1970), *Chemical Bank New York Trust Company v. Kheel*, 369 F.2d 845 (2d Cir. 1966) and *Soviero v. Franklin National Bank of Long Island*, 328 F.2d 446 (2d Cir. 1964), the *Vecco* court listed seven elements to be evaluated:

1) the presence or absence of consolidated financial statements,

2) the unity of interests and ownership between the various corporate entities,

3) the existence of parent and inter-corporate guarantees on loans,

4) the degree of difficulty in segregating and ascertaining individual assets and liability,

5) the transfer of assets without formal observance of corporate formalities,

6) the commingling of assets and business functions,

7) the profitability of consolidation at a single physical location.

*4 BR* at 410.

■ Concerning items 1, 2 and 3, the corporate structure elements, much of this has already been discussed in the earlier description of the Debtors involved in this proceeding. Since 1973 Food Fair has issued consolidated financial statements. All of the Debtors, except Food Fair, are wholly owned subsidiaries so that there can be no question as to the unity of ownership. And in contrast to the evidence before the court in *In re Gulfco Inv. Corp.*, 593 F.2d 921 (10th Cir. 1979) where the wholly owned subsidiaries had their own officers who were not officers of the upstream corporation, most of the officers of Food Fair's subsidiaries held similar offices within Food Fair. Significantly, all major policy decisions for all the Food Fair companies were made by the Food Fair board of directors. And, at least between Food Fair and Fields, there existed extensive cross corporate guarantees which continued up until Field ceased operations during the Chapter XI proceeding.

Elements 3, 4 and 5 deal with accounting procedures, or to be more precise, the lack of them. Steven Kessler, a partner of Touche Ross & Co., the accounting firm retained by the Debtors through prior orders of this Court, testified that his company's audit revealed that there were severe problems with the internal controls on Food Fair's financial system. At the beginning of the audit, the intercompany account was out of balance more than $14 million, and after several thousand hours of audit time that account was still out of balance by approximately $2 million. Food Fair was required to place a footnote on its 1979 financial report which read as follows, "it was not possible for the company to reconstruct accounting records that would be required to provide assurances that its 1979 consolidated financial statements are prepared in accordance with generally accounting principled." (Debtors' Exhibit # 18, Tr. at p. 88).

This Court, by an order dated September 5, 1980, authorized the continued retention of Touche Ross & Co., to aid Food Fair going forward in improving its management control processes and in correcting the material weaknesses in its internal control system that still exist. This Court is cognizant of the fact that the focus of the thousands of hours of accounting work provided by Touche Ross has been to set up an accounting system for Food Fair which will prevent the problems which developed while Food Fair was a family run business. Both Steven Kessler and John Marra, Vice President and Controller of Food Fair, testified that the lack of documents, confusion in the record keeping and the inability to locate ex-employees have made verification of inter-company transactions time consuming and often impossible. (Tr. at pp. 76, 98). The difficulty and expense of attempting, at this point in time, to reconstruct separate balance sheets for each of the Debtors so as to allocate expenses, assets and liabilities to each of the various entities far outweigh any possible benefit to creditors. See *Chemical Bank New York Trust Company v. Kheel*, 369 F.2d 845 (2d Cir. 1966).

Factor seven, the profitability of consolidation at a single physical location, exists here as well. During the Chapter XI proceeding Food Fair has closed its unprofitable operations, and has actively sought to restructure the business of the remaining locations. Corporate offices have recently been consolidated in Florida to better service the supermarkets now functioning primarily in the southern part of the east coast.

Finally a key factor for this Court, although not mentioned by the *Vecco* court, is that substantive consolidation of these Debtors will yield an equitable treatment of creditors without any undue prejudice to any particular group. As was stated by the court in *Stone v. Eacho* (*In re Tip Top Tailors, Inc.*), 127 F.2d 284, 288 (4th Cir. 1942), "only by ignoring the separate corporate entity of the subsidiary [ies] and consolidating the proceeding with those of the parent corporation can all the creditors re-

ceive that equality of treatment which it is the purpose of the bankruptcy act to afford." By consolidating all of these proceedings all of the assets of the Debtors can be pooled to provide a common fund for the payment of all claims which will be treated as having been filed in a consolidated proceeding.

The only group of creditors possibly prejudiced in any way by the elimination of cross-corporate guarantees, unsecured Fields creditors with Food Fair guarantees, has actively negotiated for a consolidated plan of arrangement in recognition of the fact that such a plan treats all unsecured creditors of the Debtors with greater fairness. As no evidence has been presented which would lead this Court to conclude that any creditors relied on the separate credit of any of the subsidiaries, or dealt solely with one company without knowledge of its interrelationship with the others, *Chemical Bank v. Kheel*, 369 F.2d 845 (2d Cir. 1966), and as this Court has balanced all of the conflicting interests and has determined that "the balance is decidedly in favor of all the creditors of all of the debtor companies and in favor of achieving that debtor rehabilitation which Chapter XI contemplates," *In re Commercial Envelope Manufacturing Co., Inc.*, 3 BCD 647, 652 (S.D.N.Y.1977), the motion of the Debtors is hereby granted.

Therefore, it is hereby ordered that

1. The Chapter XI proceedings of the above captioned debtors (collectively the "Consolidated Debtors") be and they hereby are consolidated substantively into a single proceeding solely for the purposes of the Chapter XI proceedings, including but not limited to the acceptance, confirmation and all other action with respect to the Plan and any and all amendments or modifications thereto, in such consolidated proceedings (the "Consolidated Proceedings").

2. Solely for the purposes of the Consolidated Proceedings:

(a) All assets and liabilities of the debtors and debtors in possession are merged and are deemed to be the assets and liabilities of the Consolidated Debtors;

(b) All obligations and debts due or owing to or from any debtor from or to any other debtor are eliminated; and all cross-corporate guarantees of the debtors are eliminated and are deemed to be of no force and effect; and any claim or portion thereof filed or to be filed by any creditor based upon such a guarantee is void and of no force and effect;

(c) Any obligation of any debtor and all guarantees thereof executed by one or more of the other debtors are deemed to be one obligation of the Consolidated Debtors;

(d) Any claims filed or to be filed in connection with any such obligation and such guarantees are deemed to be one claim against the Consolidated Debtors;

(e) Each and every claim filed in the individual proceedings of any of the debtors is deemed filed against the Consolidated Debtors in the Consolidated Proceedings;

(f) The debtors' filing of the Plan is ratified and approved, and the Consolidated Debtors are authorized to take all lawful action in connection with the Plan and any and all amendments or modifications thereto;

(g) In the event of a termination of the Consolidated Proceedings for any reason other than by reason of the confirmation of a plan in the Consolidated Proceedings, subject to further order of this court, this order of substantive consolidation shall, without further order of this court, be of no further force and effect and the Consolidated Proceedings shall be deconsolidated for all future proceedings;

(h) In the further event that any one of the debtors is adjudicated bankrupt, this order of substantive consolidation shall, without further order of this court, be deemed amended so as to exclude such debtor from the Consolidated Proceedings, and this order shall be deemed to have no further application as to such debtor and the future proceedings with respect to such debtor shall be deemed deconsolidated.

3. The Consolidated Debtors are authorized to file consolidated schedules and statements of affairs and executory contracts.

4. The entry of this order shall in no way adversely affect the security interests and liens held by any secured creditors of any of the debtors in or upon any of the assets of any of the debtors; nor shall the entry of this order elevate or improve any such security interests or liens.

5. The relief granted herein shall not be deemed to alter, amend or destroy the separate corporate charters of the respective debtors.