**In re RICHTON INTERNATIONAL CORPORATION, also d/b/a Bond Street, Ltd., a division and Ronay, a division, Debtor.**

**In re The RICHTON JEWELRY COMPANY, INC., formerly known as Coro, Inc., also d/b/a Aspen Skiwear, a division and the Richton Headwear Company, a division, Debtor.**

**In re RICHTON SPORTSWEAR, INC., Debtor.**

**Bankruptcy Nos. 80 B 10374, 80 B 10375 and 80 B 10376.**

United States Bankruptcy Court, S. D. New York.

July 16, 1981.

Stroock, Stroock & Lavan, New York City, for debtors.

DeBevoise, Plimpton, Lyons & Gates, New York City, for Arthur Anderson & Co.

Adler, Pollock & Sheehan, Providence, R. I., for Koffler Corp.

Weil, Gotshal & Manges, New York City, for Bank Creditors.

Cole & Deitz, New York City, for Richton.

Gelberg & Abrams, New York City, for Creditors Committee.

MEMORANDUM OPINION

JOHN J. GALGAY, Bankruptcy Judge.

On March 18, 1980 Richton International Corporation (International), Richton Jewelry Company, Inc., (Jewelry) and Richton Sportswear, Inc., (Sportswear) each filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Pursuant to the provisions of Section 1108 of the Code each Debtor has continued to operate its business. On April 10, 1980 the United States Trustee appointed a single Unsecured Creditors' Committee to function in all three cases. On April 29, 1980, this Court entered an order directing joint administration of the International, Jewelry and Sportswear cases for procedural purposes. The issue now before this Court is whether these cases should be substantively consolidated so that a single plan of arrangement based on merged assets and liabilities may be filed, and a single disclosure statement, as required under Section 1125 of the Code, may be distributed to creditors.

The Debtors filed a notice of hearing dated June 16, 1981 which was duly served upon all creditors of these Debtors who had filed claims in these proceedings or who were listed in the books and records of these Debtors. Hearings on the application were held on July 9 and 13, at which time the Debtors presented their case, supported in their application by representatives of the Unsecured Creditors' Committee.

Although no opposition to the motion is currently pending, this Court is mindful of its duties to scrutinize carefully the evidence offered, *In re Commercial Envelope Manufacturing Co., Inc.*, 3 BCD 647, 648 (S.D.N.Y.1977), as "consolidation in bankruptcy, in the form directed in this case, is no mere instrument of procedural convenience ... but a measure vitally affecting substantive rights." *In re Flora Mir Candy Corporation*, 432 F.2d 1060, 1062 (2d Cir. 1970). Based on my knowledge of these proceedings since the filings in March 1980 and on the testimony and exhibits produced at the hearings on July 9 and 13, this Court concludes that the requirements for substantive consolidation developed by the courts of this circuit have been satisfied, and that the application of the Debtors for an order consolidating the separate proceedings into a single proceeding thereby merging all assets and liabilities, and eliminating all intercompany obligations and guarantees is hereby granted.

International is a publicly held company whose stock was traded on the American Stock Exchange prior to the filing of International's petition. International owns all of the issued and outstanding stock of Jewelry and Sportswear. International is engaged, directly and through its subsidiaries and affiliates, including Jewelry and Sportswear, in the business of designing, manufacturing and marketing active sportswear, accessories and jewelry. The business activities of International and its subsidiaries and affiliates (collectively, the "Richton Group") are conducted in the United States and abroad. The Debtors constitute the United States portion of the Richton Group. According to the testimony of John K. Kabay, director, senior vice president and chief financial officer of International and vice president and board member of Sportswear and Jewelry, the Debtors have operated as a single business entity. Management of the business activities of the Debtors, and the Richton Group as a whole, is the province of International. The Chairman of the Board of Directors of International is the Chairman of the Board of Directors of Jewelry and Sportswear; International appoints the members of the Boards of Directors of Jewelry and Sportswear, all or a majority of whom are and were officers and/or directors of International. Also, International establishes the accounting and control systems for all its subsidiaries and affiliates, including Jewelry and Sportswear, and monitors their performance. *See* Transcript of the July 9 hearing at p. 37.

At regularly scheduled meetings of the Board of Directors of International matters pertaining to the operations and affairs of Jewelry and Sportswear were regularly discussed, acted upon and overall matters of policy for the entire Richton Group were

considered and dealt with. In addition, significant operational and policy decisions respecting the Debtors were made and implemented by the management of International. July 9 transcript at p. 38. On the other hand, the Boards of Directors of Jewelry and Sportswear did not hold regular meetings. Matters such as adopting bank resolutions and granting authorization to enter into certain transactions, such as leases, were normally taken by action of the respective Board of Directors without a meeting. *Id.* at p. 40.

Prior to the date of filing of the Chapter 11 petitions, International controlled the flow of cash throughout the Richton Group. Whenever necessary, such as during periods when one Debtor was experiencing losses or when a Debtor was in an inventory build-up period, funds were shifted between the Debtors in order to provide the necessary sustenance for operations. In the case of Jewelry and Sportswear, without this influx of funds made possible by credit arrangements of International with the Bank Group and without advances from other affiliates, they could not have continued in business by virtue of the substantial losses suffered by Sportswear and Jewelry in recent years. This interdependence among the Debtors and their affiliates is reflected by the substantial amount of intercompany indebtedness existing at the time of the filing of the Chapter 11 petitions. Transcript of July 9 at p. 34.

The prepetition financial arrangements of the Debtors underscore the interdependence of the companies. A consortium of seven banks (the Bank Group) entered into a term loan agreement and a revolving credit agreement with International which downstreamed money from these borrowings to Sportswear and Jewelry. Jewelry and Sportswear issued notes for and, it is claimed, guaranties of the obligations of International under these loans. Transcript of July 9 at p. 44. Additionally, the loan agreements imposed restrictions on the rights of the subsidiaries to borrow money on their own. Transcript of p. 35. As a result, the debt to the Bank Group constitutes 75 percent of the total outstanding debt of these debtors. Transcript at p. 43.

Finally, the Debtors have filed consolidated federal tax returns, utilizing all procedures available for sheltering income including loss carrybacks and loss carryforwards. Financial statements, annual reports and reports to the Securities and Exchange Commission were also prepared and filed on a consolidated basis. Information made available to creditors was also generally furnished on a consolidated basis and not on a company basis. Such information included the Debtors' annual reports, audited consolidated financial reports and financial data available to credit reporting organizations such as Dun & Bradstreet. Thus, all information generally available to the public upon which creditors could have relied in determining the credit-worthiness of any of the Debtors was normally available only on a consolidated basis. Transcript at pp. 34, 45. *See also* Debtors' Exhibit 1, 10K and 10Q Reports as filed with the Securities and Exchange Commission.

From this brief outline of the Debtors' prepetition activities, it is clear that Jewelry and Sportswear were dependent on International for management and financing. The court in *In re Vecco Construction Industries,* 4 B.R. 407 (E.D.Va.1980) noted the increased need for substantive consolidations occasioned by the interlocking directorates of modern corporations. That court went on to summarize the factors to be weighed in determining whether the motion to consolidate should be granted by the bankruptcy court under its equity power. It has long been recognized that, as no statutory authority grants the court the authority to disregard separate corporate structures and create a single estate for the benefit of creditors, the power to consolidate must derive from the general equity jurisdiction of a court of bankruptcy. *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939), as implemented by section 105(a) of the Code which authorizes the court to issue orders necessary to carry out the provisions of the Code.

Culled from key cases such as *In re Continental Vending Machine Corp.,* 517 F.2d 997

(2d Cir. 1975); *In re Flora Mir Candy Corporation*, 432 F.2d 1060 (2d Cir. 1970); *Chemical Bank New York Trust Company v. Kheel*, 369 F.2d 845 (2d Cir. 1966) and *Soviero v. Franklin National Bank of Long Island*, 328 F.2d 446 (2d Cir. 1964), the *Vecco* court listed seven elements to be evaluated:

1) the presence or absence of consolidated financial statements,

2) the unity of interests and ownership between the various corporate entities,

3) the existence of parent and inter-corporate guarantees on loans,

4) the degree of difficulty in segregating and ascertaining individual assets and liability,

5) the transfer of assets without formal observance of corporate formalities,

6) the commingling of assets and business functions,

7) the profitability of consolidation at a single physical location.

*4 BR* at 410.

Concerning items 1, 2 and 3, the corporate structure elements, much of this has already been discussed in the earlier description of the Debtors involved in this proceeding. It has been the policy of the Richton group to issue only consolidated financial statements. Transcript at p. 35.

Jewelry and Sportswear are wholly owned subsidiaries so that there can be no question as to the unity of ownership. And in contrast to the evidence before the court in *In re Gulfco Inv. Corp.*, 593 F.2d 921 (10th Cir. 1979) where the wholly owned subsidiaries had their own officers who were not officers of the upstream corporation, most of the officers of Richton subsidiaries held offices within International.

Significantly, all major policy decisions for all the companies were made by International's board of directors. And, there existed extensive cross corporate guarantees of both bank and trade obligations. Transcript at p. 42.

Elements 3, 4 and 5 deal with accounting procedures, or to be more precise, the lack of them. It is in this respect that this case differs from most substantive consolidation motions, including the one recently ruled on by this Court, Food Fair. Mr. Kabay freely admitted that there would be no great difficulty in breaking out the financial data for each company. Transcript at p. 51. The problem is that, according to the analysis of the Richton management and the Unsecured Creditors' Committee, it would be impossible for these Debtor companies to operate on a stand alone basis without the aid of the other operations, both foreign and domestic, that are part of the Richton group. *Chemical Bank v. Kheel*, 369 F.2d 845 (2d Cir. 1966) has stood for the proposition that consolidation is appropriate "where the interrelationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them so substantial as to threaten the realization of any assets for all creditors." *Id.* at 847. Yet even that court considered interwined financial statements as only one factor to be considered. What is present in this case is a situation akin to what was found by the court in the *Soviero* case, that many creditors dealt with International, Sportswear and Jewelry as one entity.

Finally, a key factor for this Court, although not mentioned by the *Vecco* court, is that substantive consolidation of these Debtors will yield an equitable treatment of creditors without any undue prejudice to any particular group. As was stated by the court in *Stone v. Eacho* (In re Tip Top Tailors, Inc.), 127 F.2d 284, 288 (4th Cir. 1942), "only by ignoring the separate corporate entity of the subsidiary [ies] and consolidating the proceeding with those of the parent corporation can all the creditors receive that equality of treatment which it is the purpose of the bankruptcy act to afford." By consolidating all of these proceedings all of the assets of the Debtors, and the foreign subsidiaries not before this court, can be pooled to provide a common fund for the payment of all claims which will be treated as having been filed in a consolidated proceeding.

The only groups of creditors possibly prejudiced in any way by the elimination of cross-corporate guarantees, unsecured Sportswear or Jewelry creditors with International guarantees, have negotiated for a consolidated plan of arrangement in recognition of the fact that such a plan treats all unsecured creditors of the Debtors with greater fairness and is probably the only alternative to a liquidation. As no evidence has been presented which would lead this Court to conclude that any creditors relied on the separate credit of any of the subsidiaries, or dealt solely with one company without knowledge of its interrelationship with the others, *Chemical Bank v. Kheel*, 369 F.2d 845 (2d Cir. 1966), and as this Court has balanced all of the conflicting interests and has determined that "the balance is decidedly in favor of all of the creditors of all of the debtor companies and in favor of achieving that debtor rehabilitation which Chapter 11 contemplates," *In re Commercial Envelope Manufacturing Co., Inc.*, 3 BCD 647, 652 (S.D.N.Y.1977), the motion of the Debtors is hereby granted.

Submit order in conformance with the foregoing.