**In re F. A. POTTS AND CO., INC., and G.M.P. Land Company, Inc., Debtors, Jointly Administered.**

**Bankruptcy No. 81–03639 T.**

United States Bankruptcy Court, E. D. Pennsylvania.

Sept. 23, 1982.

---

Leon S. Forman, Earl A. Stamm, Horace A. Stern, Philadelphia, Pa., Abe H. Frumkin, Pottsville, Pa., for debtors.

Gary Schildhorn, Philadelphia, Pa., for Creditors Committee.

Michael H. Reed, Philadelphia, Pa., for Ransomes & Rapier, P.L.C., European American Banking Corp.

Richard L. Berkman, Philadelphia, Pa., for Getty Refining & Marketing Co.

Robert H. Kauffman, Reading, Pa., for Nordic Bank.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Presently before the Court is an application for substantive consolidation, which was jointly filed by the debtors, F.A. Potts and Co., Inc., (hereinafter "Potts"), and G.M.P. Land Company, Inc. (hereinafter "GMP") in this Chapter 11 case. The application is opposed by European-American Banking Corporation (hereinafter "EAB"), a secured creditor of GMP and an unsecured creditor of Potts, and by Ransomes and Rapier, P.L.C. (hereinafter "R & R"), a guarantor of the obligations of GMP and Potts to EAB. Based upon the reasons set forth in this Opinion, we shall approve the debtors' application for substantive consolidation.[1]

---

1. This opinion constitutes the findings of fact and conclusions of law as required by Rule 752 of the Rules of Bankruptcy Procedure.

On September 11, 1981, the debtors, Potts and GMP, filed separate voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code. On October 2, 1981, this Court ordered the debtors' cases consolidated for the purpose of joint administration only. The debtors jointly filed an application for substantive consolidation on May 19, 1982. On June 17, 1982, EAB and R & R jointly filed an answer in opposition to the debtors' application for substantive consolidation and requested a hearing thereon. No other responsive pleading was filed by any other person or entity in opposition to the debtors' application. On June 23, 1982, an evidentiary hearing was held, at which Karl Goos, the president of both Potts and GMP, was the only witness presented. At the hearing, counsel for the Official Unsecured Creditors' Committee of Potts reiterated the Committee's support of the debtors' application for substantive consolidation.

Potts is the parent corporation of GMP, its wholly-owned subsidiary. Potts is basically a broker in coal, whose principal place of business is located in Pottsville, Schuylkill County, Pennsylvania. Potts acquires coal, in the main, from third parties who have acquired such coal pursuant to coal mining leases with GMP. Potts then markets the coal.

GMP is basically a land-holding company, whose principal business is the ownership and leasing of approximately 16,000 acres of coal-bearing land in Schuylkill County, Pennsylvania. GMP leases the land to third party investors and receives a royalty income from them for the coal which is mined on its property. Many of the third party investors sell the coal to Potts which then markets the coal.

The following additional facts are important in further understanding the close relationship between Potts and GMP. Potts and GMP have the same Board of Directors and the same officers. Karl Goos, the president of both Potts and GMP, makes the major decisions for both companies. The operations of both Potts and GMP are directed from the same office in Pottsville,

Pennsylvania. All of the officers of GMP are paid by Potts. All "in-house" accounting for GMP is performed by Potts inasmuch as GMP does not have an accounting staff. The authorized signatories on checks for Potts and GMP are identical. Furthermore, Potts and GMP have always prepared consolidated financial statements and have always filed consolidated tax returns. The financial affairs of both companies have always been closely interrelated. For example, prior to their both filing for reorganization in this Court, it was common practice for Potts and GMP to transfer funds from one to the other as needed at a particular time. In sum, we agree with Mr. Goos' testimony at the hearing that Potts and GMP comprise essentially "one operation". (N.T. p. 6, 6/23/82).

The authority of a Bankruptcy Court to order substantive consolidation is not expressly provided by any statute or rule. Yet, it is clearly established that Bankruptcy Courts have long had such authority pursuant to their general equity jurisdiction, currently as implemented by section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a), which authorizes a Bankruptcy Court to issue orders necessary to carry out the provisions of the Code. *In re Richton Intern. Corp.*, 12 B.R. 555, 557 (Bkrtcy.S.D.N.Y.1981); *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1001 (2d Cir. 1975).

During the past several years, there has been a liberal trend by the courts in allowing substantive consolidation, based principally, it appears, upon the courts' recognition of the increasingly widespread existence in the business world of parent and subsidiary corporations with interrelated corporate structures and functions. See, for example, *In re Vecco Const. Industries, Inc.*, 4 B.R. 407, 409 (Bkrtcy.E.D.Va.1980); *In re Richton Intern. Corp., supra,* at 557.

Regardless of this liberal trend, we are, of course, mindful of our duty to consider and balance any and all conflicting interests in our determination of whether or not to exercise our equitable power to grant substantive consolidation.

We believe that the criteria adopted by the court in the case of *In re Snider Bros., Inc.,* 18 B.R. 230, 238 (Bkrtcy.D.Mass. 1982), provide proper guidelines to assist a Court in exercising its· equitable power in ruling upon a request for substantive consolidation. Following a careful review of the leading cases dealing with the issue of substantive consolidation, the *Snider* court concluded that the following two criteria must be met in order for substantive consolidation to be granted:

1) the applicants must demonstrate that there is a necessity for substantive consolidation or a harm to be avoided by the use of the equitable remedy of substantive consolidation; and

2) the benefits of substantive consolidation must outweigh the harm to be caused to objecting creditors.

In applying the first *Snider* criterion to the present case, we note that debtors, in paragraph 9 of their application, alleged two separate grounds upon which substantive consolidation should be granted:

"9. Substantive consolidation of the Applicant's [sic] Chapter 11 cases at this time will be in the best interest of the Applicants, their Estates, and their creditors, as it will:

a) Permit the Applicants' business operations to continue more efficiently and will avoid potential operational problems; and

b) Allow the Applicants to negotiate and file more expeditiously a single, comprehensive, consolidated plan of reorganization for both of the Debtors."

In order to understand the debtors' contention in paragraph 9(a) of their application, we will discuss additional facts concerning the somewhat complicated business relationship between Potts and GMP. In essence, Potts and GMP contract with various groups of independent investors. In return for GMP's leasing of certain of its coal-bearing land to them, the investors agree to pay a royalty to GMP for all coal

mined on that land. The investors further agree to sell such coal to Potts, which, in turn, agrees to pay the investors' cost of mining the coal.[2] Potts also agrees to pay for such coal a specified price, which includes the cost of the royalty payment paid by the investors to GMP.

Thus, in effect, Potts has been paying a royalty to GMP. Of course, Potts realizes some revenues from its subsequent marketing of the coal at a higher price than Potts' purchase price from the investors. Nevertheless, this overall arrangement, depending in large part upon the timing of Potts' receipt of revenues from its marketing of the coal, has, at times, resulted in a cash surplus for GMP and a cash shortage for Potts. For various reasons, Potts is currently experiencing a particularly serious cash shortage while GMP has a cash surplus.

Prior to the filing of these Chapter 11 petitions, Potts had loaned considerable sums of money to GMP for GMP's acquisition of its property and GMP had, from time to time, made repayments when Potts was .experiencing a cash shortage. GMP still owed Potts approximately $5,800,000.00 when the Chapter 11 petitions were filed. Of course, because of the present bankruptcy proceedings, GMP cannot simply transfer funds to Potts in partial repayment of this debt. Although this court has, at the request of the debtors and without opposition from any of their creditors, permitted three separate temporary secured advances from GMP to Potts, any further such advances do not appear feasible in that the evidence indicates that Potts' severe cash shortage would imminently prevent Potts from being able to repay any further advance. (N.T. pp. 18–19, 6/23/82).

The evidence further indicates that Potts' current cash shortage problem shows no signs of lessening in severity.

We find that Potts' cash shortage imminently threatens the continued business op-

---

**2.** The actual mining of the coal is done by a coal-mining company, and not by Potts nor by

the investors.

erations of both Potts and GMP. Without the requisite cash, Potts will not be able to fund the mining operations on GMP's land. As discussed *supra,* these mining operations provide the basis for revenue generation for both Potts and GMP. Furthermore, because of its cash shortage, Potts is in arrears on some of its secured equipment payments, and any additional default in these payments could further jeopardize the continued business operations of both Potts and GMP. (N.T. pp. 41–43, 6/23/82).

■ Therefore, we conclude that the first *Snider* criterion, *supra,* has been met by debtors in that substantive consolidation is necessary in this case to alleviate Potts' serious cash shortage problem, thereby insuring, to the fullest extent possible, the continued business operations of the debtors. Through substantive consolidation, of course, the assets of both debtors will be merged so that the cash can be used where it is needed most. Our conclusion herein is buttressed by the obvious interdependence of Potts and GMP and by our finding, *supra,* that Potts and GMP have historically comprised essentially one operation.[3]

■ As a corresponding basis for decision in this regard, we agree with the debtors' contention in paragraph 9(b) of their application that substantive consolidation is necessary to facilitate the filing of a comprehensive and consolidated plan of reorganization. We so conclude because we find persuasive Mr. Goos' uncontradicted testimony that substantive consolidation would significantly increase the opportunity of the consolidated debtors to obtain long-term financing, particularly from European financing sources. (N.T. pp. 36–39, 6/23/82). The obtaining of such financing would appear to be a critical step in the debtors'

filing of a feasible plan of reorganization with this Court.

■ We now turn to the second *Snider* criterion, namely that the benefits of substantive consolidation must outweigh the harm to be caused to objecting creditors. For the reasons hereinafter stated, we find that this criterion has also been satisfied.

Prior to these bankruptcy proceedings, EAB financed GMP's purchase from R & R of a piece of coal mining equipment known as a walking dragline. At the inception of these bankruptcy proceedings, the debt owing from GMP to EAB for this purchase was approximately $12,000,000.00. This obligation is secured by a third mortgage on all of GMP's property. In addition, GMP and EAB agreed that if the two senior mortgages are satisfied or otherwise lose their priority, the EAB mortgage on the entire property would become void, but EAB would still retain a mortgage on the approximately 640 acres of GMP's land where the walking dragline was to operate. EAB also obtained a security interest in the walking dragline itself.[4]

EAB and R & R contend that they could be harmed by substantive consolidation because they are not satisfied that the obligation in question is fully secured.[5] However, we find from the evidence that this obligation is fully and adequately secured. In its schedules filed with this Court, GMP has valued the walking dragline itself at approximately $12,000,000.00, and there is no evidence in the record to contradict this valuation. It should be noted that, for a variety of reasons, the walking dragline has not yet been operational, and there has thus been no attendant depreciation in its value. Thus, the dragline itself basically fully secures GMP's obligation to EAB, apart from

---

**3.** We note, as pointed out by EAB and R & R in their Memorandum, that Potts and GMP have always kept separate their individual assets and liabilities and that there is no problem in ascertaining the individual assets and liabilities of each. We agree with the court in *In re Richton Intern. Corp., supra,* that this is only one of the factors to be considered on the issue of substantive consolidation. In the present case, we do not believe that this factor signifi-

cantly militates against the other factors arguing in favor of substantive consolidation.

**4.** Furthermore, this obligation is guaranteed on an unsecured basis by both Potts and R & R, the seller.

**5.** Of course, EAB and R & R concede they are not harmed if the obligation is fully secured.

consideration of the security provided by EAB's above-described mortgagee status vis-a-vis GMP. The parties differ as to the value of the security which EAB has obtained as a result of its mortgage arrangement with GMP. However, regardless of the precise value, the Court is convinced that EAB's security interest therein is substantial. When the value of this security in the land is added to the value of the walking dragline itself as security, we conclude that the debt owed to EAB from GMP is fully secured. Thus, we find that EAB and R & R are not harmed by substantive consolidation because EAB is fully secured in GMP's debt to EAB.

EAB and R & R have alleged a second ground for denial of substantive consolidation, namely, that approval of same will deprive them of the opportunity to file their own plan or plans of reorganization or liquidation for one or each debtor. However, EAB and R & R have not demonstrated that this lost opportunity will cause them any significant harm nor have they cited any cases in this regard to support their position. Therefore, we find that the demonstrated benefits of substantive consolidation, discussed *supra,* clearly outweigh the alleged harm to EAB and R & R in this regard.

We conclude, therefore, that the second *Snider* criterion is satisfied in this case in that the benefits of substantive consolidation clearly outweigh any alleged harm to EAB and R & R. This is particularly so because EAB and R & R have failed to show that substantive consolidation will cause any significant harm to their interests on either of the two grounds put forth by them.

In conclusion, we hold that the debtors have demonstrated the need for substantive consolidation and that the benefits of substantive consolidation outweigh any harm that may be caused thereby to EAB and R & R. Furthermore, we see no evidence that substantive consolidation will harm the interests of any other creditor, person, or entity involved in this case. Rather, we believe that substantive consolidation will inure generally to the benefit of the debtors and their creditors alike by helping the debtors to operate more efficiently and to file a feasible consolidated plan of reorganization.

Therefore, the debtors' application for substantive consolidation is hereby granted.

### ORDER

AND NOW, this 23rd day of September, 1982, upon consideration of the Application of F.A. Potts and Co., Inc. ("Potts") and G.M.P. Land Company, Inc. ("G.M.P."), Debtors, for substantive consolidation of their respective Chapter 11 reorganization cases, after hearing on notice to all creditors, and it appearing that such relief as requested therein is in the best interest of the Debtors, their Estate, and their creditors, and the Official Unsecured Creditors' Committee of F.A. Potts and Co., Inc. having consented thereto, it is hereby

ORDERED that the pending Chapter 11 reorganization cases of both of the Debtors be and they are hereby consolidated for substantive purposes, and the Debtors shall be treated as one entity for the purposes of these proceedings, and there shall be one Creditors' Committee for the consolidated Debtors being the Official Creditors' Committee of Potts as previously constituted; and it is further

ORDERED that the business operations of the Debtors may be conducted on a consolidated basis to the extent deemed necessary and practical by the Debtors; and it is further

ORDERED that the Debtors may prepare and file a single, consolidated plan of reorganization for both of the Debtors, merging all assets and liabilities and eliminating all intercompany obligations and guarantees, as well as a single, consolidated disclosure statement and all other materials attendant to a plan of reorganization; and it is further

ORDERED that, notwithstanding the entry of this Order, the Debtors may preserve their separate corporate entities to the extent such preservation is not inconsistent

with the other provisions of this Order, or inconsistent with the rights of creditors; and it is further

ORDERED that notwithstanding the entry of this Order, such substantive consolidation shall have no effect whatsoever upon and shall neither increase nor decrease in any way the prior existing rights, liens, security interests, claims or priorities of the secured creditors of Potts or GMP in any of the separate assets of the Debtors. No creditor of either Potts or GMP shall obtain, solely by virtue of or as a result of this consolidation, any lien or security interest in any asset not subject to such lien or security interest prior to consolidation, including without limitation:

(i)   the proceeds of the sale of real estate to Anthracorp, Inc.;

(ii)  accounts receivable;

(iii) general intangibles; and

(iv)  any proceeds generated by the sale of general intangibles.

The creditors of Potts shall not obtain solely by virtue of this consolidation, any security interest in any of the assets of GMP. The creditors of GMP shall not obtain solely by virtue of this consolidation, any security interest in any of the assets of Potts.