In re DONUT QUEEN, LTD., Debtor.

In re BAPAJO, LTD., Debtor.

Bankruptcy Nos. 882–81848–18, 882–82158–18.

United States Bankruptcy Court, E.D. New York.

Aug. 3, 1984.

---

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for debtors.

Abraham, Pressman & Bauer, P.C., Philadelphia, Pa., for Dunkin' Donuts.

Cullen & Dykman, Garden City, N.Y., for Long Island Trust Co.

## DECISION & ORDER

C. ALBERT PARENTE, Bankruptcy Judge.

Dunkin' Donuts of America, Inc. (hereinafter "Dunkin' Donuts"), a creditor of Donut Queen, Ltd. (hereinafter "Donut Queen"), has moved for a substantive consolidation of the cases of *In re Donut Queen, Ltd.* and *In re Bapajo, Ltd.* Long Island Trust Company, N.A. (hereinafter "LIT"), a creditor of both Donut Queen and Bapajo, Ltd. (hereinafter "Bapajo"), has filed papers in opposition to this motion.

BACKGROUND

On July 16, 1982, Donut Queen filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Reform Act of 1978 (hereinafter "Code"). On August 25, 1982, Bapajo filed its petition for reorganization under Chapter 11. Bapajo had been established for the sole purpose of holding the land and building in which Do-

nut Queen operated as a Dunkin' Donuts franchise. *See* Hearing of May 8, 1984 (hereinafter "Hearing") at pp. 14, 17.

Subsequent to the filing of their petitions, both companies ceased business operations, and their assets were jointly sold pursuant to an order of this court for a combined sum of $364,000.00. The two companies filed separate Plans of Reorganization and Disclosure Statements on January 30, 1984. On May 8, 1984, Donut Queen and Bapajo submitted separate amended plans of reorganization and disclosure statements.

Dunkin' Donuts is a creditor of only Donut Queen. Its claim stems from a judgment obtained in Federal District Court adjudging Donut Queen, Westbury Donuts, Inc. (hereinafter "Westbury Donuts") and Gloria Morrison jointly and severally liable for infringement of certain Dunkin' Donuts trademarks. Damages were assessed in the sum of $72,473.73. Dunkin' Donuts was also awarded $16,847.29 for attorney's fees and other costs. *See Westbury Donuts, Inc., Donut Queen, Ltd. and Gloria Morrison v. Dunkin' Donuts of America, Inc., Marco Amoni, and Mada Land Corp.*, E.D.N.Y., Docket No. 79–C–3103. Although Dunkin' Donuts has filed proofs of claim in both the Donut Queen and Bapajo cases, it seeks *inter alia* by its motion to consolidate a judicial determination that its claim against Donut Queen in and of itself affords it the right to recover against Bapajo assets as well.

Dunkin' Donuts alleges that the separate legal identities of these two debtors have not been maintained in their dealings with creditors, and that the affairs of Donut Queen and Bapajo have been so entangled that consolidation is necessary to protect the rights of creditors. It contends that the following factors warrant consolidation:

1) A unity of ownership and interest exists between these debtors as Gloria Morrison is the sole stockholder and president of both companies. Hearing at pp. 33, 42–44.

2) Donut Queen and Bapajo were co-guarantors of a loan made by LIT to West-

bury Donuts, a third corporation which shares are solely held by Gloria Morrison. Hearing at p. 14.

3) The debtors failed on occasion to observe the formalities of corporate separateness. For example, no corporate resolutions were recorded by Bapajo regarding its guarantor relationship with Donut Queen and Westbury Donuts or its lease arrangement with Donut Queen. Hearing at pp. 37–42. *See generally* Supplemental Memorandum of Creditor Dunkin' Donuts of America, Inc. in Support of Motion for Consolidation ("Cr.Mem."); *see also* 5 Collier on Bankruptcy, ¶ 1100.06 (15th Ed. 1983).

LIT is a creditor of both Donut Queen and Bapajo. It has obtained judgments against Donut Queen and Bapajo, as co-guarantors of the loan on which Westbury Donuts defaulted, and has filed proofs of claim against both reflecting these judgments. Although the record is unclear, Dunkin' Donuts asserts that LIT has docketed its judgment within the preference period. Based upon this premise, it further reasons that any lien created by the docketing would appear to be voidable. *See* Cr. Mem. at p. 3. LIT has not disputed Dunkin' Donuts characterization of when the judgment was docketed.

In opposing the motion for consolidation, LIT asserts that it has consistently treated these debtors as two separate entities, and that the financial affairs and related financial data of each debtor indicate that they are in fact separate. *See generally* Affidavit in Opposition to Motion for Consolidation, filed by LIT. LIT further contends that consolidation will not be equitable to all creditors because the creditors of Donut Queen and Bapajo are not a uniform creditor body. Hearing at pp. 64, 74–75.

The debtors take no position with respect to the motion.

## DISCUSSION

■ The power of this court to substantively consolidate separate corporate debtors arises out of its general equity jurisdiction, as authorized under § 105(a) of the

Code. *In re Richton Intern. Corp.*, 12 B.R. 555, 557, 7 B.C.D. 1139, 1140 (Bkrtcy. S.D.N.Y.1981). This power has been generally recognized as one to be exercised sparingly and with caution because its use will significantly affect the substantive rights of debtors and creditors. *In re Flora Mir Candy Corp.*, 432 F.2d 1060, 1062 (2d Cir.1970); 12 B.R. at 556.

Substantive consolidation aggregates both the claims existing against the two estates and the assets of the estates. Consequently, when the percentage distribution of assets to claims in one estate is less than that of the estate sought to be consolidated, consolidation will have the effect of reducing dividends paid to creditors of the latter estate. When those creditors have treated the latter debtor as a distinct and separate entity, consolidation would be manifestly prejudicial to such creditors. *See In re Snider Bros., Inc.*, 18 B.R. 230, 234, 8 B.C.D. 1016 (Bkrtcy.D.Mass.1982); 12 B.R. at 558; *In re Food Fair*, 10 B.R. 123, at 127 (Bkrtcy.S.D.N.Y.1981).

Recent cases have succinctly stated the proposition that a determination of whether or not consolidation is necessary hinges on a balancing of the equities favoring consolidation against the equities favoring continued debtor separateness. 12 B.R. at 558; 10 B.R. at 127; 18 B.R. at 234; *In re F.A. Potts & Co. Inc.*, 23 B.R. 569, 7 C.B.C.2d 415, 9 B.C.D. 846 (Bkrtcy.E.D.Pa.1982); *accord Soviero v. Franklin National Bank of Long Island*, 328 F.2d 446, (2d Cir.1964); *Chemical Bank New York Trust Company v. Kheel*, 369 F.2d 845 (2d Cir.1966); 432 F.2d at 1060; *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1 B.C.D. 1064 (2d Cir.1975), *cert. denied* 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317.

■ As can thus be expected, the party seeking consolidation bears the burden of proof to demonstrate that any prejudice resulting from consolidation is outweighed by the greater prejudice posed by the continued separation of the estates. 18 B.R. at 234, 238; *see also Matter of Lewellyn*, 26 B.R. 246, 251–52; 7 C.B.C.2d 1060 (Bkrtcy.S.D.Iowa 1982). A necessary corollary of this proposition is that it is incumbent upon the party seeking consolidation to demonstrate that it would be prejudiced if the estates were to remain as separate.

■ The Second Circuit cases cited above have articulated many factors that have been considered in determining a motion for consolidation. In *In re Vecco Construction Industries, Inc.*, 4 B.R. 407, 410, 2 C.B.C.2d 216, 6 B.C.D. 461 (E.D.Va.1980), the court summarized these factors (*Vecco* factors):

1) the presence or absence of consolidated financial statements;

2) the unity of interests and ownership between the various corporate entities;

3) the existence of parent and inter-corporate guarantees on loans;

4) the degree of difficulty in segregating and ascertaining individual assets and liabilities;

5) the existence of transfers of assets without formal observance of corporate formalities;

6) the commingling of assets and business functions;

7) the profitability of consolidation at a single physical location.

*Accord*, 12 B.R. at 558; *In re Food Fair, Inc.*, 10 B.R. 123, 127 (Bkrtcy.S.D.N.Y. 1981); 328 F.2d at 446, 369 F.2d at 845, 432 F.2d at 1060, 517 F.2d at 997.

■ The case law reveals that the objective criteria set forth in *Vecco* should not be mechanically applied in reaching an ultimate finding on the issue of consolidation:

> There is no one set of elements which, if established, will mandate consolidation in every instance. Moreover, the fact that corporate formalities may have been ignored, or that different debtors are associated in business in some way, does not by itself lead inevitably to the conclusion that it would be equitable to merge otherwise separate estates.

18 B.R. at 234.

Rather, the enumerated factors should be evaluated within the larger context of bal-

ancing the prejudice resulting from the proposed order of consolidation with the prejudice the moving creditor alleges it suffers from debtor separateness. 432 F.2d at 161–63; 369 F.2d at 848–49 (Friendly, J., concurring); 12 B.R. at 559; 10 B.R. at 127; cf. 369 F.2d at 845; see generally Benjamin Weintraub and Alan N. Resnick, "Consolidation in Bankruptcy Reorganization of Multi-tiered Corporations—Chemical v. Kheel Revisited," (From the Bankruptcy Courts) Vol. 14 U.C.C. L.J. pp. 177–185 (Fall, 1981).

A review of the facts of the case indicates that although Dunkin' Donuts has met its burden with respect to element number 2, demonstrating that a unity of ownership and interest exists between Donut Queen and Bapajo, it has not proven that any of the remaining Vecco factors exist in this case. Moreover, it has failed to demonstrate that it was aware of the debtor's interrelatedness and that it treated the debtors as a unified entity. Thus, it has failed to demonstrate that it will be prejudiced by continued debtor separateness.

Donut Queen and Bapajo did not maintain consolidated financial records. Accountant William Reinheimer testified that he prepared separate financial statements for each company, including separate books and records of account, and separate checkbooks. Hearing at pp. 25–28. Reinheimer also testified that neither Donut Queen nor Bapajo had ever paid expenses that the other had incurred. Hearing at p. 34.

Dunkin' Donuts has failed to offer evidence that there will be difficulty in segregating and ascertaining these debtors' assets and liabilities. The separate Chapter 11 schedules of the two debtors bolster this conclusion.

The absence of several corporate resolutions from the Bapajo corporate records is not a sufficient basis to conclude that Donut Queen and Bapajo failed to observe the formalities of corporate separateness. Earlier cases that have determined consolidation to be warranted have found a more extensive lack of corporate formalities than is indicated by this evidence. See 12 B.R. at 556, 557, 10 B.R. at 125, 126. In this case, the absence of the corporate resolutions might be indicative of both the corporate informality inherent in the operating of a small corporation and the unity of ownership that exists between the debtors. Without further evidence, this court cannot assume that the articulated failure by these debtors to observe corporate formalities would warrant consolidation.

Dunkin' Donuts has not demonstrated the existence of a commingling of assets and business functions by the debtors in their business operations. As noted above, Donut Queen and Bapajo were established with different corporate purposes. The evidence adduced before this court indicates that the two debtors have held separate assets, and that they have incurred separate liabilities with essentially different groups of creditors.

The debtors have both discontinued operations as a consequence of having sold their assets and having filed plans of liquidation. See 11 U.S.C. § 1123(b)(4). Consequently, there is no issue in this case of enhancing the profitability of these debtors as a result of consolidation. See 18 B.R. at 237; 12 B.R. at 558; 10 B.R. at 127; In re Commercial Envelope Manufacturing Co., Inc., et al., 3 B.C.D. 647 at 650; 432 F.2d at 1060.

The guarantees by Donut Queen and Bapajo of the Westbury Donut obligation to LIT are not of such character as to mandate consolidation. Decisions consolidating estates have been predicated upon the extensive presence of inter-corporate guarantees of both bank and trade obligations by, and for the mutual benefit of, the debtors sought to be consolidated. See 12 B.R. at 557, 558; 10 B.R. at 125, 126; 3 B.C.D. at 649–51. In this case, the guarantees executed by Donut Queen and Bapajo, relative to one specific transaction, do not evidence any such commonality of business purpose between the two entities. Rather, Bapajo and Donut Queen were co-guarantors on a loan to benefit Westbury Donuts, a third corporation not a party to these proceed-

ings. Hearing at pp. 18–19, 37. The fact that Donut Queen and Bapajo have guaranteed a loan to Westbury Donuts may raise issues as to their relationship with the latter entity; however, the court is not persuaded that this factual predicate demonstrates a legally cognizable nexus between Donut Queen and Bapajo.

Dunkin' Donuts further suggests that this relationship between Donut Queen and Bapajo is only properly evaluated in the context of the larger triadic relationship which also includes Westbury Donuts. The three entities, it is asserted, share a unity of interest directed toward furthering the objectives of their common principal, Gloria Morrison. Hearing at pp. 72–73. However, this position fails to distinguish between the personal objectives of Gloria Morrison and the corporate purposes of Westbury Donuts. Under New York State law, the distinction must be drawn between the actions of one corporation taken in furtherance of the objectives of another corporation and actions taken in furtherance of the purely personal ends of the principal of the latter corporation. *See Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979), *citing Walkovszky v. Carlton,* 18 N.Y.2d 414, 276 N.Y.S.2d 585, 223 N.E.2d 6 (1966).

Dunkin' Donuts has offered no evidence that Gloria Morrison has used either Donut Queen or Bapajo to effectuate purely personal transactions. The evidence indicates that Donut Queen and Bapajo have acted in furtherance of the business purpose of Westbury Donuts, not of the personal interest of Morrison.

Most significantly, Dunkin' Donuts has failed to adduce any evidence that it treated the debtors as a unified entity. Rather, the reasonable implication from the fact that it brought suit against Donut Queen, Westbury Donuts and Morrison in its trademark infringement action, and omitted to join Bapajo therein, is that it neither viewed Bapajo and Donut Queen as unified nor treated them as such in its business affairs.

Dunkin' Donuts points to the fact that LIT required both Donut Queen and Bapajo to guarantee its loan to Westbury Donuts as indicative of an interconnection between these former entities. This court derives a contrary implication from such evidence. LIT recognized the limited financial resources of Westbury Donuts as a distinct economic unit. In light of Westbury Donut's limited creditworthiness, LIT required the additional assurances of two distinct economic entities and required formal guarantees in recognition that they were indeed distinct. In essence, Dunkin' Donuts is attempting to capitalize on the business acumen of LIT, notwithstanding that it, Dunkin' Donuts, has failed to exercise the same degree of diligence. A reasonable inference from the failure of Dunkin' Donuts to investigate the financial posture of Donut Queen is that Dunkin' Donuts did not predicate its franchise agreement on Donut Queen having a requisite amount of assets. Dunkin' Donuts has never asserted that Donut Queen misrepresented the extent of its resources.

To reiterate, a party seeking the consolidation of two distinct debtors must carry the burden of demonstrating that the equities favoring such an order must outweigh those militating towards debtor separateness. Dunkin' Donuts has not met this burden. It has failed to adduce substantial evidence of an interrelationship between the debtors. Moreover, under the facts of this case, this court finds that Dunkin' Donuts took no steps to ascertain the financial creditworthiness of Donut Queen and did not in its course of dealing treat Donut Queen and Bapajo as one entity. It would be manifestly inequitable to grant to Dunkin' Donuts the right to assert its claim against Bapajo, when, on review of the record, Dunkin' Donuts had no reasonable expectation of recovering from it sums owed by Donut Queen.

Accordingly, the motion for consolidation is denied.

It is SO ORDERED.